UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL D. TRZEBIATOWSKI, <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN CO., an Illinois corporation, <br><br> Defendant. | CASE NO. C09-0228-RSM <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court upon Defendant Walgreen's Motion for Summary Judgment. Dkt. #29. Plaintiff brings claims for (1) wrongful termination on the basis of age in violation of the Washington Law Against Discrimination (WLAD) and the federal Age Discrimination in Employment Act (ADEA); (2) age discrimination in violation of the WLAD and ADEA; and (3) wrongful termination in violation of public policy. Walgreen moves for summary judgment as to each of Plaintiff's claims. For the reasons set forth below, the Court GRANTS Defendant's motion.

## II. DISCUSSION

**A. Background**

Plaintiff Trzebiatowski was born in 1951. He began working at Walgreen in 1985. By 2001, he had been promoted to the position of Store Manager ("SM") and was asked to open a new store on Rainier Avenue in Seattle (the "Genesee Store"). As a SM, Plaintiff was the highest ranking person in his store. His yearly bonus was based in part on store profitability, a metric that was influenced by the amount of money spent on labor costs. In April 2006, Plaintiff received low marks on his performance review as a result of being over budget on such costs. Dkt. #32 at ¶ 5, Exs. 1-2.

Walgreens has an electronic timecard system that requires employees to "punch in" and "punch out" when they begin and end working. Employees are permitted to take one thirty-minute lunch break every shift. They must punch out before taking their break and punch in upon returning. If an employee fails to punch in or out, or if their timecard is inaccurate, an SM may make manual adjustments through the computer system. Pursuant to Walgreen's written policy any such adjustments must be made with the prior approval of the affected employee. Walgreen's policy provides:

> Do **not** change an employee's time records without the approval of both the Store Manager and the employee. Anyone changing an employee's punches to reduce or increase hours paid may be subject to termination.

Dkt. #39, Ex. 11 (emphasis in original). Where it cannot be determined when the employee's actual start and/or stop times occurred, the SM is required to give the employee the benefit of the doubt that the employee did not take longer than a 30-minute lunch break. Dkt. #32; Dkt. #39, Ex. 1 at 262:2-23. Plaintiff who was aware of the Walgreen policy concerning timecard

1 adjustments acknowledges viewing an on-line video in which this policy was emphasized by a
2 senior executive from Walgreen. Dkt. #39, Ex. 1 at 471:1-474:8, Ex. 9.

3    In addition to the formal Walgreen policy, Plaintiff had a policy within his store for
4 correcting payroll errors. If an employee complained about his or her pay, Plaintiff instructed
5 them to note any missing pay on their timecard when they signed for their check. Plaintiff would
6 then work with the affected employee to remedy the issue. Dkt. #42.

7    Between November 2006 and January 2007, Walgreen received three complaints that
8 employees were being underpaid at Plaintiff's store. Dkt. #32 at ¶ 12-14; Dkt. #33 at ¶ 2.
9 Employee "Emmanuel" complained that he had been underpaid the two previous summers, had
10 raised the issue with Plaintiff, and that Plaintiff did nothing to address it. Dkt. #32 at ¶12.
11 Emmanuel purportedly opted not to return to Plaintiff's store the following summer because of
12 his payroll issues. *Id*. Because Emmanuel was away at college, Walgreen never was able to
13 substantiate his claim. Plaintiff's supervisor, Denise Myers, pulled time cards and examined
14 punch audit trails for the time period in which Emmanuel was working. She determined that
15 Emmanuel had made many punch errors, but that there was no excess of manual time changes.
16 Dkt. #41, Ex. 6.

17    The second complaint came from Yeshi Firdu, who said that she had been underpaid
18 while working as a "floater" between Plaintiff's store and another Walgreen. Dkt. #32 at ¶ 13.
19 Firdu mentioned the problem to Plaintiff on multiple occasions but never wrote down the
20 disputed dates, times and store numbers on her timecard for his review. Dkt. #42. Therefore,
21 Plaintiff mistakenly assumed the matter had been resolved. *Id.* The issue was escalated to
22 Myers, who assumed the underpayment was inadvertent and told Plaintiff to remedy it. Dkt. #32
23 at ¶ 13.

24

1       The third complaint came from Diem Nguyen who said that she had not received her
2  $0.50 per hour raise that she was entitled to as a result of becoming "certified." *Id.* at ¶ 14. She
3  spoke to Plaintiff on several occasions but he never resolved the issue. Dkt. #33. Myers
4  investigated and determined that Nguyen's claim had merit and paid her approximately the
5  $1,300 that was due. Dkt. #32 at ¶ 14.
6       As a result of these complaints concerning underpayment, Plaintiff was suspended with
7  pay pending completion of a broader audit of his store's payroll practices. Upon conducting the
8  audit, Walgreen discovered that between December 24, 2005 and February 16, 2007 Plaintiff had
9  manually adjusted employees' recorded time on 89 occasions. *Id.* at ¶ 16. On each of these
10 occasions, Plaintiff adjusted the time to reflect that the employees had taken more than a thirty
11 minute break, thus decreasing employees' compensable work time. *Id.* According to Loss
12 Prevention Supervisor, Larry Holland, this finding concerned him because "edits to punches
13 should be rare." Dkt. #29 at ¶ 3. Employees are required to accurately punch in and out of the
14 system. *Id.* In addition, employees are required to take only 30-minute long breaks because
15 many often need to relieve others on their shift. *Id.*
16      Upon reviewing electronic journals, it appeared that many of the times that Plaintiff
17 recorded an employee being on break, the employee was logged onto a register and/or
18 conducting a transaction. Dkt. #29 at ¶ 3. Several of the affected employees reported never or
19 only rarely taking breaks longer than thirty minutes. *Id.* When Plaintiff was interviewed
20 concerning the findings of the audit, Plaintiff admitted that he "guessed" as to when lunches
21 began and ended on several occasions and did not consult with the affected employees before
22 adjusting their time cards. Dkt. #32 at ¶ 17; Dkt. #34 at ¶ 3. Plaintiff also admitted at his
23
24

1  deposition that he did not consult with employees for each of these manual changes. *See, e.g.,*
2  Dkt. #39, Ex. 1 at 270:8-16, 271:22-272:3; 278:13-279:18.

3  Walgreen determined that it owed employees at Plaintiff's store approximately $4,000 in
4  back pay as a result of Plaintiff's unapproved manual adjustments. On February 22, 2007,
5  Plaintiff was discharged. Between 2003 and 2008 Walgreen discharged at least four other
6  employees who were younger than Plaintiff for similar violations of payroll policy. Dkt. #35 at ¶
7  2, 3, 5; Dkt. #32 at ¶ 19.

8  On December 14, 2007, Plaintiff filed a charge of age discrimination with the EEOC.
9  Dkt. #39, Exs. 3 & 4. The EEOC issued a right to sue letter on October 8, 2008. *Id.,* Ex. 5.
10 Plaintiff filed this lawsuit on January 21, 2209, which was subsequently removed to federal
11 court. Dkt. #1.

**B. Standard of Review**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary

judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**C. Violations of the WLAD and the ADEA**

Under the ADEA, employers may not "discharge any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, under the WLAD, an employer may not "discharge or bar any person from employment because of age" or "discriminate against any person in compensation or in other terms or conditions of employment because of age." RCW 49.60.180. Plaintiff alleges that he was unlawfully discharged on the basis of age. *Id.* at ¶¶ 5.1-5.6. He also alleges that Walgreens discriminated against him on the basis of age by denying him management opportunities, denying him working conditions, and denying him privileges, all offered to other similarly situated employees. Dkt. #1, Ex. A at ¶¶ 3.1-4.5.

    1. <u>Wrongful Termination</u>

To succeed on his claim for wrongful termination in violation of the WLAD and the ADEA, Plaintiff must show that his age was a "substantial" or "motivating" factor behind his termination. *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310 (1995) (substantial factor); *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (motivating factor). Plaintiff relies on circumstantial evidence of discriminatory intent. Therefore, his claims are subject to a burden shifting analysis. *See Enlow v. Salem-Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 812 (9th Cir. 2004); *Grimwood v. Univ. of Puget Sound,* 110 Wash.2d 355, 361 (1988). Plaintiff bears the burden of proving (1) that he is over 40, (2) that he was discharged, (3) that he was doing satisfactory work, and (4) he was replaced by a younger

1  person. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 144, 142 (2000). *Grimwood,* 110

2  Wash.2d at 362. *See also McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If he

3  cannot show that he was replaced by a younger person, he may still make out a prima facie claim

4  "if other direct or circumstantial evidence supports an inference of discrimination." *Douglas v.*

5  *Anderson*, 656 F.2d 528, 533 (9th Cir. 1981). Under Washington law, the "element of

6  replacement by a younger person . . . is not absolute; rather, the proof required is that the

7  employer sought a replacement with qualifications similar to his own, thus demonstrating a

8  continued need for the same services and skills." *Grimwood,* 110 Wash.2d at at 363 (internal

9  citations omitted).

10       Once Plaintiff proves his prima facie case, the burden of production shifts to the

11  Defendant, who must articulate a non-discriminatory reason for Plaintiff's discharge.

12  *Grimwood,* 110 Wash.2d at 364 (citing *International Bhd. Of Teamsters v. U.S.,* 431 U.S. 324,

13  360 n. 46 (1977)). Finally, to create a genuine issue of material fact, "the plaintiff must satisfy

14  his ultimate burden of persuasion and show that the employer's articulated reasons are a mere

15  pretext for what, in fact, is a discriminatory purpose." *Grimwood,* 110 Wash.2d at 364. *See also*

16  *McDonnel Douglas,* 411 U.S. at 804-805.

17       Defendant argues that Plaintiff fails to establish a prima facie case of age discrimination

18  because he does not demonstrate he was doing satisfactory work at the time he was discharged.

19  In addition, Defendant contends that Plaintiff has produced no evidence of pretext or age bias.

20       *a. Plaintiff's Prima Facie Case*

21       Plaintiff puts forth evidence that he is over 40 and was discharged from Walgreen. Dkt.

22  #39, Ex. 1 at 41:9-15; Dkt. #41, Ex. 8. He shows that he was doing satisfactory work, at least

23  until April 2006, the date of his most recent performance review. Dkt. #41, Exs. 1 & 2.

24  Defendant argues that Plaintiff cannot put forth evidence that he was performing satisfactorily at

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1   the time of his discharge because of the substantial evidence indicating that he was not
2   complying with company policy regarding payroll practices at the time of his termination.  Dkt.
3   #28 at 12.  For the reasons set forth below, which indicate that Plaintiff repeatedly violated
4   Walgreen policy on at least 89 occasions, and admitted to violating that policy, the Court agrees.
5         The Court also notes that Plaintiff fails to provide any evidence that he was replaced by a
6   younger person or that his position remained available following his discharge.  *See Reeves,* 530
7   U.S. at 142; *Grimwood,* 110 Wash.2d at 362.  He also fails to produce other direct or
8   circumstantial evidence to support an inference of discrimination.  *See  Douglas,* 656 F.2d at
9   533.  Apparently, his belief that age bias played a role in his termination is based on speculation
10  alone.  *See*  Dkt. #39, Ex. 1 at 285:17-286:6.  Accordingly, Plaintiff fails to make out a prima
11  facie case of discrimination.
12        *b.  Defendant's Justification for Plaintiff's Termination*
13        Even if Plaintiff had succeeded in producing a prima facie case, his claim fails because he
14  produces no evidence to suggest that Defendant's proferred reason for terminating him was
15  pretextual.  Walgreen argues that Plaintiff was discharged because he violated company policy
16  with respect to the record keeping of employee time, which prohibits changing time records
17  without the affected employee's prior approval.
18        Defendant has produced evidence that Plaintiff manually adjusted his employees'
19  recorded time on 89 occasions and that on each of those occasions the employee was charged
20  with taking a break lasting longer than thirty minutes.  Many of the times that Plaintiff recorded
21  an employee being on break, electronic journals revealed that the employee was logged onto a
22  register and/or conducting a transaction.  Several of the affected employees reported that they
23  never or only rarely took breaks longer than thirty minutes.  Plaintiff admits that he adjusted the
24  break period for employees under his supervision without verifying the data with the employee.

The evidence produced by Walgreen supports the contention that Plaintiff did not follow Walgreen policy. Walgreen has satisfied its burden of production and advanced a non-discriminatory reason for Plaintiff's termination.

*c. Plaintiff's Evidence that Defendant's Justification is Pretext*

"Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose." *Reeves v. Sanderson Plubming Products, Inc.,* 530 U.S. 133, 143 (2000); *Grimwood,* 110 Wash.2d at 364. This can be accomplished "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981). In this case, Plaintiff fails to raise a genuine issue of material fact regarding Defendant's reasons for terminating Mr. Trzebiatowski.

First, Plaintiff argues that he was a consistently good performer, that he had no history of payroll problems, and that none of his employees approached him about shorting them for lunch periods. Dkt. #40 at p. 8. None of these arguments address the justification provided by Defendant for Plaintiff's termination – that he violated company payroll policy by changing time records without employees' approval. Therefore, they do not raise a genuine issue of material fact concerning whether Walgreen's stated reason for the discharge was pretextual.

Second, Plaintiff produces evidence that he was not entirely to blame for the underpayment of employees Firdu and Nguyen because "other stores and their managers [were] unable, or unwilling, to assist [Plaintiff's] employees in getting paid properly. *Id.* at 2-4; Dkt. #41, Ex. 3. This evidence is similarly inapposite. Nguyen and Firdu's underpayment is only relevant insofar as it eventually motivated Walgreen to examine Plaintiff's store's punch reports.

1   However, it is Plaintiff's failure to obtain employee approval before manually adjusting those
2   punch reports that Walgreen puts forth as the basis for Plaintiff's termination.  Thus, evidence
3   regarding Firdu and Nguyen does not create a genuine issue of material fact regarding
4   Walgreen's true motive for Plaintiff's discharge.
5          Next, Plaintiff argues that Walgreen's data may not accurately reflect the accuracy of
6   Plaintiff's manually-adjusted punch times because "the systems [were] not tied together so the
7   time clocks time may not be the same as the Point of Sale controller of the video system."  Dkt.
8   #40 at p. 4; Dkt. #42.  This argument also fails to create a genuine issue of material fact
9   regarding Defendant's liability.  Plaintiff provides no evidence for his assertion that the clocks
10  were not tied together or might be inaccurate, other than his own declaration that it might be the
11  case.  Dkt. #40 at p. 4.  Further, even if the Point of Sale and video devices were inaccurate,
12  Walgreen's decision to discharge Plaintiff was based on Plaintiff's failure to consult with
13  employees prior to changing their time cards – the electronic journal evidence only supported the
14  inference that employees had not been consulted because they would not have agreed to be
15  "punched in" after they had resumed working.  However, Walgreen has also provided *direct*
16  evidence that employees had not been consulted prior to Plaintiff's adjustments to their
17  timecards.  This evidence comes in the form of declarations submitted by employees stating that
18  they only rarely took more than thirty minute breaks and the Plaintiff's own testimony that he did
19  not always seek the approval of employees before inputting their break time. Dkt. #39, Ex. 1 at
20  278:13-279:18; Dkt. #29 at ¶ 3.  Absent evidence that Walgreens had reason to disbelieve the
21  evidence garnered from comparing the timecard and electronic journal systems, declarations
22  submitted by affected employees, and the Plaintiff's own deposition testimony, Plaintiff fails to
23
24

1  raise an issue of material fact as to whether Walgreen's reason for discharging Plaintiff was
2  discriminatory.

3        Finally, Plaintiff contends that Walgreens "has no evidence that the punches were not an
4  accurate statement of the time taken by the employee for those periods" and that "if there was
5  ever any doubt as to when an employee returned from their lunch, [Plaintiff] gave that employee
6  the benefit of the doubt and punched in the employee as having had their 30 minute lunch." Dkt.
7  #40 at p. 5. These arguments also fail to resuscitate Plaintiff's claim. First, like Plaintiff's other
8  arguments, these statements do not address Walgreen's stated reason for Plaintiff's discharge:
9  that he was changing punches without seeking the prior approval of employees. Second, both
10 arguments are baseless.

11       With respect to the accuracy of the altered punches, Walgreens provides the declaration
12 of Larry Holland, who investigated Plaintiff's pay practices. Dkt. #29. Holland testifies that
13 employees he interviewed concerning the altered punches told him they never took lunch breaks
14 that exceeded 30 minutes. *Id.* at 3. Further, Walgreen provided declarations of two employees
15 who also testify that they only rarely, and only with pre-approval, took breaks that exceeded 30
16 minutes. Dkt. #s 45 and 46. However, in each of the 89 instances wherein Plaintiff altered time
17 cards, he recorded breaks in excess of 30 minutes. Dkt. #39 , Ex. 10. Therefore, Plaintiff's
18 assertion that Walgreen has no evidence that the punches were inaccurate not only fails to show
19 that Walgreen's explanation is unworthy of credence, but it is also not true.

20       With respect to the argument that Plaintiff always gave employees the benefit of the
21 doubt and punched in the employee as having had their 30 minute lunch, this testimony conflicts
22 with Plaintiff's earlier testimony that he repeatedly manually adjusted hours recorded to show a
23 lunch break longer than 30 minutes without verifying the actual duration of the lunch break with
24

1  the employee involved.  Dkt. # 39, Ex. 1 at 277:10-20.  A party is not permitted "to create his
2  own issue of fact by an affidavit contradicting his prior deposition testimony." *Radobenko v.*
3  *Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  Further, each of the 89
4  instances of manual alteration cited by Walgreen as the justification for Plaintiff's termination
5  recorded lunch breaks exceeding thirty minutes.

6        Notably absent in Plaintiff's Response is any evidence that Plaintiff was terminated
7  because of his age.  *See Burdine,* 450 U.S. at 256.   His belief that age bias played a role in his
8  termination is based on speculation alone.  *See*  Dkt. #39, Ex. 1 at 285:17-286:6.  Further, he
9  provides no evidence that would suggest that Walgreen's proffered explanation for his
10  termination is unworthy of credence.  *See Burdine,* 450 U.S. at 256. "[O]ne purpose of the
11  allocation of burdens of proof and production in . . . ADEA actions is to help district courts to
12  identify meritless suits and to stop them short of full trial." *Douglas v. Anderson*, 656 F.2d 528,
13  535 (9th Cir. 1981).  *See also Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1218 (7th
14  Cir. 1980) ("Summary judgment is improper in a discrimination case. . . if it involves . . . any
15  weighing of conflicting indications of motive and intent. Here plaintiff had no indications of
16  motive and intent, supportive of his position, to put on the scales for weighing. It was a wholly
17  empty case. In such circumstances, summary judgment is proper.").  No reasonable jury could
18  find that age discrimination was a substantial or motivating factor in Walgreen's decision to
19  terminate Plaintiff.  Walgreen's Motion for Summary Judgment is GRANTED with respect to
20  Plaintiff's wrongful termination claim.

21      2.  <u>Age Discrimination</u>

22        Plaintiff alleges that Walgreens discriminated against him in violation of the WLAD and
23  the ADEA by denying him management opportunities offered to other similarly situated
24  employees, denying him working conditions offered to other similarly situated employees, and

denying him privileges offered to other similarly situated employees. Dkt. #1, Ex. 1 at ¶¶ 3.1-4.5. Walgreen moves for summary judgment on Plaintiff's age discrimination claims on the basis that Plaintiff's complaints (1) are time-barred, (2) are too immaterial to rise to the level of actionable discrimination, and/or (3) do not give rise to an inference of unlawful discriminatory animus. Dkt. #28 at pp. 15-17. Plaintiff does not address any of his age discrimination claims in his Response to Defendant's Motion for Summary Judgment other than his claim for wrongful discharge. The Court considers Plaintiff's failure to oppose Defendant's motion as an admission that the motion has merit. *See* Local Rule CR 7(b)(2); Fed. R. Civ. P. 56(e)(3). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's age discrimination claims.

**D. Wrongful Discharge in Violation of Public Policy**

Plaintiff appears to advance three theories with respect to his remaining tort claim. Each theory fails as a matter of law. First, Plaintiff contends that his termination violated the public policy prohibiting age discrimination. Since Plaintiff has failed to prove his discrimination claim, this tort claim necessarily fails. *See Grimwood,* 110 Wash.2d at 367. Second, Plaintiff argues that his termination violated the public policy prohibiting retaliation against those opposing violations of RCW 49.60. Plaintiff has put forth no evidence that (a) he opposed a violation of RCW 49.60, or (b) he was retaliated against for any such opposition. Accordingly, Plaintiff's tort claim fails on that basis as well. *See Celotex,* 477 U.S. at 323.

Finally, Plaintiff argues that he was retaliated against for "attempting to ensure that his employees were paid for the time they worked" in furtherance of the Washington Wage and Hour laws. Dkt. #40 at p. 9. However, Plaintiff has not produced any evidence to suggest that altering his employees' time cards was necessary under Washington Wage and Hour laws. Instead, the evidence shows that Plaintiff's actions resulted in employees not being paid for time

worked, in violation of wage and hour laws. Thus, Plaintiff fails to identify any public policy implicated by his termination. The Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's public policy claim.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion for Summary Judgment (Dkt. #28) is GRANTED and this case is closed.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated this 27th day of January 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE